UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
WINDWARD BORA LLC,

                    Plaintiff,

          - against -

ROSA BAEZ a/k/a ROSA M. BAEZ a/k/a
ROSA INFANTE, *et al.*,

                    Defendants.

--------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-5698 (PKC) (SIL)

PAMELA K. CHEN, United States District Judge:

Plaintiff Windward Bora LLC ("Windward Bora") brought this mortgage foreclosure action against Defendant Rosa Baez in October 2019.[1] (Compl., Dkt. 1.) After Baez failed to appear, the Clerk of Court entered a Certificate of Default. (*See* Default Certificate, Dkt. 13.) In the summer of 2020, the Court issued a Default Judgment and a Judgment of Foreclosure and Sale, the latter of which was amended in January 2021. (*See* Default J., Dkt. 17; J. Foreclosure & Sale, Dkt. 19; Am. J. Foreclosure & Sale, Dkt. 23). Baez has now appeared, and she moves to vacate the Certificate of Default, the Default Judgment, and the Amended Judgment of Foreclosure and Sale. (*See* Def.'s Mot. to Vacate ("Mot."), Dkt. 25.) For the reasons stated below, the Court grants Baez's Motion to Vacate.

---

[1] Windward Bora also named subordinate judgment creditors American Express Centurion Bank, Citibank, and the Clerk of the Suffolk County Traffic & Parking Violations Agency as necessary-party defendants in this action. (Compl., Dkt. 1, ¶¶ 4–6.)

**BACKGROUND**

Rosa Baez is a 73-year-old woman who has lived at 55 Poplar Road, Amityville, New York, 11701 (the "Property") for many years. (*See* Baez Passport, Dkt. 26-2, at ECF[2] 1; Baez Decl., Dkt. 26-1, ¶¶ 1, 6; Compl., Dkt. 1, ¶ 10.) Her primary language is Spanish, and she has limited English proficiency. (Baez Decl., Dkt. 26-1, ¶¶ 2, 17.)

At some point, Baez took out a note and mortgage on the Property from Specialized Loan Servicing, LLC ("SLS"). (*See* Baez Decl., Dkt. 26-1, ¶¶ 4–5.) Later, on August 7, 2007, Baez executed and delivered a second note for a home equity line of credit (the "Note") in the amount of $115,000 to Indymac Bank, F.S.B. ("Indymac"). (Compl., Dkt. 1, ¶ 11; Compl. Ex. C ("Note"), Dkt. 1-1, at ECF 25–37.) As security for the Note, Baez took out a second mortgage (the "Mortgage") on the Property. (*See* Compl., Dkt. 1, ¶¶ 3, 10; Compl. Ex. B ("Mortgage"), Dkt. 1-1, at ECF 3–24.)

In 2009, after Indymac's failure and collapse, the Federal Deposit Insurance Corporation ("FDIC") took over as Indymac's receiver and assigned itself the Note and Mortgage. (*See* Compl., Dkt. 1, ¶ 12; Compl. Ex. D ("Assignments"), Dkt. 1-1, at ECF 39–43; *see also* Baez Aff., Dkt. 25, at ECF 3 ¶ 4.) Baez claims that the Mortgage has been "dormant since 2009." (Baez Aff., Dkt. 25, at ECF 3 ¶ 3.) She states that after Indymac's failure, the payment address she had for the Note and Mortgage "was no longer viable," which is why she was "unable to make payments." (*Id.* ¶ 4.) Baez "expected that [she] would be contacted by whoever took over the [Note and Mortgage] after the demise of Indymac, but [she] was never given another means of payment." (*Id.* ¶ 6.) Eventually, Baez "believed that the [Note and Mortgage] had been charged

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

off." (*Id.* at ECF 3–4 ¶ 7.) Despite her inability to make payments on the Note and Mortgage, Baez states that she has remained in good standing on her first/senior mortgage with SLS and has continued to make monthly payments to SLS of approximately $1,900. (*See* Baez Decl., Dkt. 26-1, ¶¶ 4–5, 11, 14, 19; Broderick Aff., Dkt. 26, ¶ 2.)

In 2018, the Note and Mortgage were assigned from FDIC to Value Recovery Group, LP, and then to Aspen Properties Group, LLC. (Compl., Dkt. 1, ¶ 12; Assignments, Dkt. 1-1, at ECF 44–55.) Finally, on June 3, 2019, the Note and Mortgage were assigned to Windward Bora. (Compl., Dkt. 1, ¶ 12; Note, Dkt. 1-1, at ECF 37; Assignments, Dkt. 1-1, at ECF 56.) Windward Bora determined that Baez's Note and Mortgage had been in default since June 20, 2015.[3] (Compl., Dkt. 1, ¶ 15.) Windward Bora claims that on July 10, 2019, it mailed Baez a default notice in accordance with the terms of the Note and Mortgage, and a 90-day notice as required by New York Real Property Actions and Proceedings Law ("RPAPL") § 1304(1). (*Id.* ¶ 16.) Baez denies receiving these notices, (*see* Baez Aff., Dkt. 25, at ECF 4 ¶ 13; Baez Decl., Dkt. 26-1, ¶ 13), and thus did not respond, (Compl., Dkt. 1, ¶ 18). As described in the procedural history section *infra*, Windward Bora filed this action later in 2019 and obtained a default judgment and judgment of foreclosure and sale in 2020.

In approximately May 2021, Baez "first became aware of [Windward Bora's foreclosure] action and judgment" while preparing to file for Chapter 7 bankruptcy. (Baez Decl., Dkt. 26-1, ¶ 9.) She retained bankruptcy counsel, John Weber & Associates, P.C., who "reviewed public records, listed Windward Bora LLC in the creditor matrix, and informed [Baez] [that] the matter

---

[3] It is unclear from the record how much Baez had paid in total on the Note and Mortgage between August 2007 and June 2015, and, given her representation that she was unable to make payments after 2009, (Baez Aff., Dkt. 25, at ECF 3 ¶¶ 3–4), it is also unclear how Windward Bora determined that the date of Baez's default was in 2015.

was addressed." (*Id.*)  On May 17, 2021, Baez filed for Chapter 7 bankruptcy.  (*Id.* ¶ 18.)  On July 9, 2021, the bankruptcy case was dismissed due to Baez's "failure to appear at the creditors' meeting[,] which [her] [bankruptcy] attorney did not inform [her] about." (*Id.*)  Baez believed at the time that Windward Bora's foreclosure action and judgment "were addressed" through the bankruptcy case's dismissal, in large part due to erroneous information she received from her bankruptcy counsel, (*id.* ¶ 9), and she did not learn otherwise until late 2024 or 2025, when she was informed of her impending eviction, (*id.* ¶ 10).[4]

## PROCEDURAL HISTORY

Windward Bora filed the Complaint on October 9, 2019, seeking to foreclose on the Mortgage encumbering the Property, (Compl., Dkt. 1, ¶ 1) — 91 days after Windward Bora allegedly mailed Baez the 90-day foreclosure notice, (*see id.* ¶ 16).  Later that month, Windward Bora filed a process server's affidavit stating that Baez was served with the Complaint, Summons, and other foreclosure-related notices on October 23, 2019 via delivery to "Jose Gonzalez," identified as Baez's "co-occupant" at the Property.  (Aff. of Service, Dkt. 10.)  The affidavit also states that the same documents were mailed to the Property on October 28, 2019.  (*Id.*)

Baez did not appear in this case or file an answer by the deadline, November 18, 2019.  (*See id.*; Default Certificate, Dkt. 13.)  The next day, Windward Bora filed a request for a certificate of default.  (Pl.'s Req. Default Certificate, Dkt. 12.)  The Clerk of Court entered the requested default on November 25, 2019.  (Default Certificate, Dkt. 13.)  On December 18, 2019, Windward Bora filed a motion requesting that the Court enter a default judgment of foreclosure and sale.  (Pl.'s Mot. Default J. Foreclosure & Sale, Dkt. 14.)  On July 24, 2020, the Court granted Windward

---

[4] Although neither party explicitly states this, the Court presumes that none of Baez's debts, including the Note and Mortgage, were altered or extinguished through bankruptcy.

Bora's motion for default judgment, (Mem. & Order Granting Default J., Dkt. 15), which the Clerk of Court entered on July 27, 2020, (Default J., Dkt. 17).  On August 26, 2020, at Windward Bora's request, the Court issued a separate Judgment of Foreclosure and Sale.  (J. Foreclosure & Sale, Dkt. 19.)  On January 15, 2021, at Windward Bora's request, the Court amended the Judgment of Foreclosure and Sale to allow the sale to take place on the steps outside the Central Islip Courthouse due to COVID-19 restrictions and precautions.  (Am. J. Foreclosure & Sale, Dkt. 23, at 2.)  On August 18, 2021, Windward Bora purchased the Property for $100 at the foreclosure sale.  (Referee's Report of Sale, Dkt. 24, at ECF 1, 20.)

Between August 2021 and early 2025, it appears that nothing happened in the case—Windward Bora did not seek to evict Baez, and Baez did not appear or take any other action in this case.  But, in or around early 2025, Windward Bora initiated eviction proceedings against Baez in the Suffolk County Second District Court to enforce this Court's judgment (the "State Court Case").  (*See* Baez Decl., Dkt. 26-1, ¶¶ 2, 10.)  On May 6, 2025, Baez made her first appearance in the State Court Case.  (*Id.*)

A few months later, on August 29, 2025, Baez appeared for the first time in this Court.  (*See* Mot., Dkt. 25.)  Through counsel, she filed a Motion to Vacate the Certificate of Default, the Default Judgment, and the Amended Judgment of Foreclosure and Sale.  (*Id.* at ECF 8.)[5] Windward Bora filed an opposition on October 14, 2025.  (Pl.'s Mem. Opp'n Mot. ("Opp'n"), Dkt. 31.)  Later that same day, Baez filed a reply.  (Def.'s Reply Supp. Mot. ("Reply"), Dkt. 32.) The motion is now fully briefed.

---

[5] In parallel, on September 24, 2025, Baez filed a Motion for a Preliminary Injunction with this Court, seeking to stay the State Court Case while the Court considered her Motion to Vacate. (Def.'s Mot. Prelim. Inj., Dkt. 28; Def.'s Mem. Supp. Mot. Prelim. Inj., Dkt. 28-1.)  On October 31, 2025, the Court granted Baez's Motion for a Preliminary Injunction to preserve its jurisdiction over the Motion to Vacate, (Order Granting Prelim. Inj., Dkt. 35), which the Court now addresses.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 55(c) provides that a "court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) provides six grounds for a court to relieve a party from a final judgment or order:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence . . . ;

(3) fraud . . . , misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied [or] released . . . or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

*Id.* R. 60(b). A judgment of foreclosure and sale can also be set aside under Rule 60(b). *See, e.g.*, *Gustavia Home, LLC v. Hoyer*, 802 F. Supp. 3d 445, 450, 471 (E.D.N.Y. 2025) (vacating judgment of foreclosure and sale pursuant to Rule 60(b)).

The Second Circuit has an "oft-stated preference for resolving disputes on the merits" rather than through default procedures. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (first citing *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983); and then citing *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981)). While default procedures "provide a useful remedy when a litigant is confronted by an obstructionist adversary," they are "generally disfavored and reserved for rare occasions." *Id.* at 96; *see also Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995) ("We have stated time and again that a trial court's desire to move its calendar should not overcome its duty to do justice." (collecting cases)). Thus, when ruling on a motion to vacate a default or default judgment, "all doubts must be resolved in favor of the party seeking relief from the judgment in

6

order to ensure that to the extent possible, disputes are resolved on their merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)); *accord Enron Oil*, 10 F.3d at 96.

## DISCUSSION

Baez moves to vacate pursuant to Rule 60(b)(1), (3), (4), and (6).  (*See generally* Mot., Dkt. 25.)  As described further below, Baez cannot timely move to vacate under Rule 60(b)(1) or 60(b)(3); the Court cannot at this time determine whether the judgments are void under Rule 60(b)(4); but the Court finds that exceptional circumstances justify relief and therefore grants Baez's motion to vacate pursuant to Rule 60(b)(6).

## I.      Timeliness

A motion for relief from a final judgment under Rule 60(b) must be made within a reasonable time.  Fed. R. Civ. P. 60(c)(1).  For motions made under Rule 60(b)(1) (mistake, inadvertence, surprise, or excusable neglect) and 60(b)(3) (fraud, misrepresentation, or misconduct), a "reasonable time" cannot exceed one year after the entry of the judgment or order. *Id.*; *see also* 11 Wright & Miller's Federal Practice and Procedure § 2866 (3d ed. Sep. 2025) (explaining that motions under Rule 60(b)(1)–(3) "must be denied as untimely if made more than one year after judgment regardless of whether the delay was reasonable," the one-year period "represents an extreme limit," and courts do not have "any power to enlarge the time limits of the rule").  Baez did not move to vacate until more than five years after the entry of the final judgments she seeks to vacate.  Therefore, Baez's Motion to Vacate cannot be granted based on the grounds provided under Rule 60(b)(1) and (3), since her motion was made more than one year after the entry of the relevant judgments and orders.

However, for motions made under Rule 60(b)(4) (challenging the judgment as void), the Second Circuit "has been exceedingly lenient in defining the term 'reasonable time,'" and "it has

been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void 'may be made at any time.'" *SEC v. Romeril*, 15 F.4th 166, 171 n.3 (2d Cir. 2021) (citation omitted). For motions made under Rule 60(b)(6) (any other reason that justifies relief), what constitutes a "reasonable time" depends on "the particular circumstances of the case, taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality." *Wang v. IBM*, 839 F. App'x 643, 646 (2d Cir. 2021) (summary order) (quoting *Thai-Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017)). Since Baez's motion could be timely under Rule 60(b)(4) or 60(b)(6), the Court considers those possible grounds for vacatur.

**II.      Rule 60(b)(4)**

A default judgment is void if it is rendered by a court that lacks jurisdiction over the parties. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011). "[I]f the underlying judgment is void for lack of jurisdiction, 'it is a *per se* abuse of discretion for a district court to deny a [defendant]'s motion to vacate the judgment under Rule 60(b)(4).'" *Id.* (citation omitted); *see, e.g.*, *Wilmington PT Corp. v. Parker*, No. 19-CV-2380 (DRH) (AKT), 2021 WL 4122992, at *3 (E.D.N.Y. Sep. 9, 2021) (granting motion to vacate because the default judgment was void due to defective service).

Baez argues that the Court lacked jurisdiction to enter judgment against her for two reasons: first, because Windward Bora never properly served her, depriving the Court of personal jurisdiction, (*see* Mot., Dkt. 25, at ECF 10, 12–13); and second, because Windward Bora failed to comply with certain jurisdictional requirements for foreclosure actions under New York law, depriving the Court of subject matter jurisdiction, (*see id.* at ECF 10–11).

## A.      Personal Jurisdiction: Service of Process

For a court to exercise personal jurisdiction over a defendant, "the plaintiff's service of process upon the defendant must have been procedurally proper." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); *accord Buon v. Spindler*, 65 F.4th 64, 73 (2d Cir. 2023).  Under the Federal Rules, a plaintiff may serve an individual by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," Fed. R. Civ. P. 4(e)(2)(B), or by "following state law for serving a summons . . . in the state where the district court is located or where service is made," *id.* R. 4(e)(1).  Under New York law, an individual may be served "by [both] delivering the summons within the state to a person of suitable age and discretion at the [defendant's] dwelling place or usual place of abode . . . *and* . . . by mailing the summons by first class mail to the person to be served at his or her last known residence."  N.Y. C.P.L.R. 308(2) (emphasis added).

Here, Baez bears the burden of proof to establish that proper service did not occur.  *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005) ("[O]n a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur.").  Windward Bora provides an affidavit from a process server, Thomas Burke, stating that he served a copy of the Summons and Complaint on "a person of suitable age and discretion, identified as co-occupant Jose Gonzalez," at the Property on October 23, 2019, and then mailed a copy of the Summons and Complaint to the Property.  (Opp'n, Dkt. 31, at 7 (discussing Aff. of Service, Dkt. 10).)  That affidavit "creates a presumption that service has been effectuated." *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (summary order); *see also Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301

9

F.3d 54, 57 (2d Cir. 2002) (providing that same is true for service under New York law (citing *Nyctl 1197-1 Trust v. Nillas*, 732 N.Y.S.2d 872, 873 (2001))).

However, Baez provides a competing affidavit swearing that the "service never occurred." (Baez Aff., Dkt. 25, at ECF 4 ¶ 13.)  Baez's "sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit." *Old Republic*, 301 F.3d at 57–58 (citing *Skyline Agency, Inc. v. Ambrose Coppotelli, Inc.*, 502 N.Y.S.2d 479, 483–84 (1986)).  Baez has presented "specific facts to rebut the statements in the process server's affidavit[]," *id.* at 58: she disclaims ever having had a "co-occupant" named Jose Gonzalez (or even knowing a person by that name) and denies receiving the Summons and Complaint in any form, (*see* Baez Aff., Dkt. 25, at ECF 4 ¶¶ 8, 10–13; Baez Decl., Dkt. 26-1, ¶ 13).  These factual disputes require an evidentiary hearing for the Court to determine whether proper service occurred. *Old Republic*, 301 F.3d at 57.[6]

Windward Bora argues that Baez has not rebutted the presumption of proper service because Baez's sworn affidavit only provides a "general denial of knowing [Jose Gonzalez]." (Opp'n, Dkt. 31, at 7–8.)  However, it is unclear how Baez could prove that she does not know a Jose Gonzalez other than by a general denial.  *See Wandel v. Gao*, No. 20-CV-3259 (PAC), 2022 WL 61867, at *2–4 (S.D.N.Y. Jan. 6, 2022) (holding that there is justification to vacate a default when a defendant "adequately challenged the propriety of service . . . by providing a conflicting, but plausible, version of events," including a claim that "[he] [did] not know to whom [the process

---

[6] Although an evidentiary hearing is not required in all circumstances, the Court holds that it is required where, as here, the party challenging proper service has both provided specific facts to rebut the process server's affidavit and has requested a hearing.  *Contrast United States v. Mellon*, 719 F. App'x 74, 77 (2d Cir. 2018) (summary order) (holding that an evidentiary hearing regarding proper service under Rule 4(e) was not required when the party challenging proper service chose not to submit further evidence through an affidavit and had not requested a hearing), *with* (Baez Decl., Dkt. 26-1, ¶ 13 (submitting evidence and requesting a hearing)).

server] served the papers" (final alteration in original)).   Moreover, Windward Bora has not provided any information about how its process server determined that Jose Gonzalez was a co-occupant, as required for proper service under Rule 4(e)(2)(B), or even that Jose Gonzalez was "at" the Property, as required for proper service under New York C.P.L.R. 308(2). *See Dominguez v. Hernandez*, No. 21-CV-7051 (MKB) (VMS), 2023 WL 2575224, at *12 (E.D.N.Y. Feb. 22, 2023) (holding that a process server's affidavit that identified the recipient as the "Son/Co-Resident" of the defendant, but "did not provide information as to how the process server obtained that information," could not rely on the "conclusory statement" of co-residence to demonstrate proper service under federal law), *report and recommendation adopted*, No. 21-CV-7051 (MKB) (VMS), 2023 WL 2574876 (E.D.N.Y. Mar. 20, 2023).   For example, Windward Bora fails to provide information that answers certain relevant questions: How did the process server determine that Jose Gonzalez was Baez's co-occupant?  Where did he find Jose Gonzalez?  Was it on the street in front of Baez's home?  Across the street?  Was Jose Gonzalez physically inside Baez's home, answering the door when the process server knocked?  Windward Bora also does not identify or provide any records indicating that a "Jose Gonzalez" resides at, or is even associated with, the Property.  Based on the current record, the Court cannot determine whether service was proper; an evidentiary hearing is necessary to address these questions and others.

Windward Bora next argues that the Court should discredit Baez's affidavit as not credible. (Opp'n, Dkt. 31, at 8.)  It points out that, while Baez claims she was in the Dominican Republic from May 2019 to March 2020, (*see* Baez Aff., Dkt. 25, at ECF 4 ¶ 8), Baez's passport shows that she re-entered and remained in the United States from July to December 2019.  (Opp'n, Dkt. 31, at 8 (discussing Baez Passport, Dkt. 26-2).)  Windward Bora contends that this evidence proves

that Baez was in the country when the purported service took place (on October 23, 2019), and that Baez's "false statement" to the contrary "undermin[es] her credibility." (*Id.*)

Windward Bora's argument is insufficient for two reasons. First, Baez's physical location in October 2019 is largely irrelevant because Windward Bora claims to have served a "Jose Gonzalez" at the Property, not Baez herself. The relevant issue therefore is whether this "Jose Gonzalez" was Baez's "co-occupant" or "at" Baez's home on October 23, 2019, which Baez has sufficiently disputed. Second, even assuming that Baez *did* misstate her physical whereabouts between July and December 2019—which arguably casts doubt on the veracity of the sworn statements in her Affidavit—that does not relieve the Court of its obligation to determine the parties' credibility at an evidentiary hearing rather than on the papers.

The cases Windward Bora cites do not persuade the Court otherwise. (Opp'n, Dkt. 31, at 7 (first citing *Lopez v. Mohammed*, No. 14-CV-4442 (PKC) (MDG), 2017 WL 4277154, at \*4–6 (E.D.N.Y. Sep. 26, 2017); and then citing *De Curtis*, 529 F. App'x at 86).) In *Lopez*, this Court held that the defendant's denial of service lacked credibility *after* an evidentiary hearing. *See Lopez*, 2017 WL 4277154, at \*4–7. And in *De Curtis*, the defendant offered a conclusory denial of service and then actively *withdrew* his request for an evidentiary hearing under circumstances strongly suggesting that the defendant had lied when he denied being personally served. *See DeCurtis v. Upward Bound Int'l, Inc.*, No. 09-CV-5378 (RJS), 2012 WL 4561127, at \*3, \*5 (S.D.N.Y. Sep. 27, 2012) (defendant requested an evidentiary hearing, the court warned defendant of the consequences of lying at such a hearing but nonetheless granted one, and then, "just days before the hearing was to take place," defendant's lawyer stated that he "'wishe[d] to respectfully withdraw his request' after 'discussing the matter at length with [defendant]'" (first alteration in original)), *aff'd sub nom. De Curtis v. Ferrandina*, 529 F. App'x 85 (2d. Cir. 2013). The Court

12

views these cases as affirming the importance of an evidentiary hearing in determining whether service was proper, and thus, where a defendant, as in *De Curtis*, seeks to avoid one, the Court can draw a negative inference about the defendant's credibility without holding a hearing. Here, however, Baez does not seek to avoid a hearing and instead requests one. (Baez Decl., Dkt. 26-1, ¶ 13.)

Moreover, while Baez might or might not have been in the Dominican Republic during October 2019, her passport shows that she did frequently travel to the Dominican Republic around that time and often stayed there for months. (*See generally* Baez Passport, Dkt. 26-2.) Resolving all doubts in Baez's favor, as the Court must, *see Green*, 420 F.3d at 104, she could have genuinely misremembered whether she was there on a given date more than six years ago. That inference is bolstered by the fact that Baez voluntarily provided her passport, which she presumably would not have done if she believed that it would disprove her claim about her whereabouts.[7]

In sum, the Court cannot determine who is more credible as a general matter—Baez or Windward Bora—and cannot rule on whether proper service occurred without an evidentiary hearing.

---

[7] Windward Bora would be wise to heed the adage that people who live in glass houses should not throw stones, given the finding by another judge in this District that Windward Bora was "not candid with [the] Court" when seeking default judgment in another mortgage foreclosure case, while represented by the same law firm as here. *See Windward Bora, LLC v. Feinstein*, No. 18-CV-2029 (SFJ) (GRB), 2019 WL 13548083, at *11 (E.D.N.Y. Sep. 30, 2019); *see also Windward Bora, LLC v. Weiss*, 717 F. Supp. 3d 247, 256 n.4 (E.D.N.Y. 2024) ("The Court may take judicial notice of dockets from other courts' proceedings because they are public records." (quoting *Acceptance Indem. Ins. Co. v. Crammer Oconner Fiber Genesis*, No. 22-CV-1197 (HG) (RLM), 2022 WL 14058786, at *4 n.1 (E.D.N.Y. Oct. 24, 2022))).

B.       **Subject Matter Jurisdiction: Compliance with RPAPL**

1.       Failure to Provide Proper Notice under RPAPL § 1304

Baez argues that Windward Bora failed to comply with RPAPL § 1304 in various respects: (1) the 90-day pre-foreclosure notice was not sent by a proper party; (2) Windward Bora's proof of service of the 90-day pre-foreclosure notice lacks a postmark; and (3) the tracking number provided for the foreclosure-notice mailing indicates that it was not mailed. (*See* Baez Decl., Dkt. 26-1, ¶¶ 7–8.) Baez contends that the failure to comply with RPAPL § 1304 is a jurisdictional defect under New York law that renders the Court's judgment void for lack of subject matter jurisdiction. (*See id.*)

"State law governs the question [of] whether state notice requirements are jurisdictional in a diversity case" such as this one. *Santander Bank, N.A. v. Harrison*, 858 F. App'x 408, 409 (2d Cir. 2021) (summary order). Here, the Court does not find that compliance with RPAPL § 1304 is a jurisdictional requirement under New York law. Because this issue has not been squarely addressed by the New York Court of Appeals, *see Freedom Mortg. Corp. v. Powell*, No. 2:18-CV-4265 (ENV) (CLP), 2020 WL 4932145, at *2 n.1, *3 (E.D.N.Y. Aug. 24, 2020); *Sec. of U.S. Dep't of Hous. & Urb. Dev. v. Rhodie as Co-Tr. of Lornice Rhodie Revocable Living Tr.*, No. 21-CV-3165 (KAM), 2022 WL 3213048, at *4 (E.D.N.Y. Aug. 9, 2022), the Court is "bound to apply [state] law as interpreted by [the] state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion," *Rhodie*, 2022 WL 3213048, at *4 (first alteration in original) (quoting *Abbey Hotel Acquisition, LLC v. Nat'l Surety Corp.*, No. 21-2609, 2022 WL 1697198, at *2 (2d Cir. May 27, 2022) (summary order)). The Supreme Court of the State of New York, Appellate Division, Second Judicial Department has ruled on this issue in cases that the Court finds persuasive and on-point. *See id.* (collecting cases). For example, in *HSBC Bank USA, National Association v. Perry*, 113 N.Y.S.3d 247 (2d Dep't

14

2019), the Second Department explained that "a failure to comply with the requirements of RPAPL . . . 1304 . . . is not jurisdictional in nature," and thus did not provide grounds for vacatur of a default judgment of foreclosure and sale under New York's analog to Rule 60(b)(4). 113 N.Y.S.3d at 248.[8] The Court thus concludes that a plaintiff's failure to comply with RPAPL § 1304 is not a jurisdictional defect.[9] Assuming that Windward Bora failed to comply with RPAPL § 1304, such a failure would not render the judgment void and thereby provide grounds for vacatur under Rule 60(b)(4).[10]

---

[8] New York's analog to Rule 60(b)(4) of the Federal Rules is Rule 5015(a)(4) of the New York Civil Practice Law and Rules, which permits a court to relieve a party from a final judgment or order upon the ground of "lack of jurisdiction to render the judgment or order." N.Y. C.P.L.R. 5015(a)(4).

[9] This conclusion aligns with those of other courts in this District granting default judgment despite a plaintiff's failure to comply or plead compliance with RPAPL § 1304, after concluding that such a failure is a non-jurisdictional defect. *See, e.g.*, *Freedom Mortg. Corp. v. Phillip*, No. 19-CV-1215 (RJD) (LB), 2020 WL 9812917, at *4 (E.D.N.Y. Mar. 2, 2020), *report and recommendation adopted*, Minute Order (April 8, 2020); *Rhodie*, 2022 WL 3213048, at *4; *U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Kozikowski*, No. 19-CV-0783 (DLI) (CLP), 2022 WL 4596753, at *5–6 (E.D.N.Y. Sep. 30, 2022); *Sec. of U.S. Dep't of Hous. & Urb. Dev. v. Robedee*, No. 22-CV-0809 (FB) (JMW), 2022 WL 18284844, at *4 (E.D.N.Y. Dec. 5, 2022), *report and recommendation adopted*, No. 22-CV-0809 (FB) (JMW), 2022 WL 17850116 (E.D.N.Y. Dec. 22, 2022).

Although other cases in this District have held that federal courts may properly consider whether a plaintiff has complied with RPAPL § 1304 before granting default judgment, those cases still agree that the requirements of RPAPL § 1304 are non-jurisdictional. *See, e.g.*, *Freedom Mortg. Corp. v. Cadet*, No. 19-CV-3158 (RRM) (VMS), 2023 WL 6358070, at *3–4, *6–7 (E.D.N.Y. Sep. 29, 2023) (distinguishing federal from state procedural law and explaining that federal default procedures allow the court to *sua sponte* consider non-jurisdictional defenses, unlike New York default procedures, and concluding that the court may properly consider compliance with RPAPL § 1304 as a potential "meritorious defense" when deciding in its discretion whether to grant default judgment).

[10] The Court expresses no opinion here about the merits of Baez's RPAPL § 1304 argument as a substantive defense to the underlying foreclosure action. *See, e.g.*, *Cadet*, 2023 WL 6358070, at *6–7 (explaining that a plaintiff's failure to comply with RPAPL § 1304 could be a meritorious defense to liability sufficient to relieve a party from default or default judgment); *see also infra* § III.B (considering Baez's RPAPL § 1304 argument as potential meritorious defense).

15

2.      Failure to Join the Senior Mortgage-Holder Under RPAPL § 1311

Baez also argues that the Court lacked subject matter jurisdiction because Windward Bora failed to either join or notify the senior mortgage-holder (SLS), as required by RPAPL §§ 1311 and 1315.  (Mot., Dkt. 25, at ECF 10–11; Baez Decl., Dkt. 26-1, ¶¶ 5, 11; Reply, Dkt. 32, at 5, 7, 13–14.)[11]  Baez again argues that these are jurisdictional defects under New York law.  (*See* Mot., Dkt. 25, at ECF 10–11; Baez Decl., Dkt. 26-1, ¶¶ 5, 11; Reply, Dkt. 32, at 5, 7, 13–14.)

However, the Court does not agree that RPAPL § 1311 requires joinder of senior mortgage-holders like SLS.  That statute requires joinder of parties with an interest "subject and subordinate to the plaintiff's lien."  RPAPL § 1311; *see also id.* § 1311(3) (necessary-party defendants include "[e]very person having any lien of incumbrance upon the real property which is claimed to be *subject to and subordinate to* the lien of the plaintiff" (emphasis added)).  A "subordinate" lien refers to any lien recorded after the primary lien.  *See Plenitude Cap. LLC v. Utica Ventures, LLC*, 592 F. Supp. 3d 82, 86 (E.D.N.Y. 2021) (collecting cases).  A *senior* mortgage—one recorded *before* the plaintiff's lien—does not fall within that definition.

Indeed, "[a]s a general proposition, one owning an interest senior to the mortgage to be foreclosed is neither a necessary nor a proper party" to a New York foreclosure action.  2 Bruce J. Bergman & Martin Valk, *Bergman on New York Mortgage Foreclosures* § 12.10 (2026) (first citing *E. N.Y. Sav. Bank v. Alston*, 547 N.Y.S.2d 198 (Sup. Ct. Queens Cnty. 1989); and then citing *Scharaga v. Schwartzberg*, 540 N.Y.S.2d 451 (2d Dep't 1989)).  That is because foreclosure of a

---

[11] Although Baez references RPAPL § 1515, the Court assumes that she intended to cite RPAPL § 1315.  (*Compare* Baez Decl., Dkt. 26-1, ¶ 5 ("[P]laintiff failed to notify the senior lienholder (SLS) as required by RPAPL § 1515(2) . . . ."), *with* RPAPL § 1515(2) (describing the complaint requirements in an action to compel the determination of a claim to real property, which is seemingly inapposite), *and* RPAPL § 1315 (requiring owner of junior participating interest in a mortgage to notify the senior interest-holder prior to taking action to foreclose the mortgage).)

16

junior mortgage does not affect the status of a senior mortgage. *See Vos v. Lee*, No. 07-CV-0804 (RLM), 2009 WL 10640615, at \*12 (E.D.N.Y. Dec. 23, 2009) ("[T]he junior mortgagee by its foreclosure action does not extinguish any rights of the senior mortgagee, as the purchaser of the foreclosed realty takes the property subject to the senior liens." (collecting cases)).  Thus, even without joining the senior mortgage-holder, the court, in a junior mortgage-holder's foreclosure action, can still typically "accord complete relief among the existing parties" without risking "impair[ing] or imped[ing]" the senior mortgage-holder's "ability to protect [their] interest" in the property.  *See* Fed. R. Civ. P. 19(a)(1)(A)–(B); *accord* N.Y. C.P.L.R. 1001(a) (parties must be joined if necessary for "complete relief . . . to be accorded between the persons who are parties to the action" or if the parties "might be inequitably affected by a judgment in the action").  In contrast, parties with junior interests must be joined to protect their interests because "the foreclosure action will extinguish the rights of all parties with subordinate interests in the property." *Fed. Nat'l Mortg. Ass'n v. Active Mgt. Props. LLC*, No. 23-CV-9022 (RPK) (PK), 2025 WL 3451875, at \*7 (E.D.N.Y. Mar. 14, 2025) (quoting *358 & 360 Atl. Ave. Holdings, LLC v. 358 Atl. Realty LLC*, No. 21-CV-0168 (DG) (PK), 2023 WL 2969297, at \*7 (E.D.N.Y. Mar. 1, 2023)).

Baez cites two New York state cases for the proposition that senior mortgage-holders must be joined as necessary parties under RPAPL § 1311, (Mot., Dkt. 25, at ECF 10–11; Reply, Dkt. 32, at 7), but neither is persuasive.  In *418 Trading Corp. v. Moon Realty Corp.*, 137 N.Y.S.2d 513 (1st Dep't 1955) (per curiam), the Supreme Court of the State of New York, Appellate Division, First Judicial Department addressed a mortgage foreclosure action brought by a plaintiff who held a junior interest in a second mortgage.  137 N.Y.S.2d at 514.  The court held that the plaintiff's failure to join the party with the senior interest in that same second mortgage—on which the plaintiff sought to foreclose—was a "jurisdictional defect requiring dismissal of the complaint."

17

*Id.* However, the fatal defect was *not* the failure to join the party who held the *first* and *separate* mortgage, which is what Baez argues occurred here. *See id.* ("[W]e think that the holder of the senior participating interest *in the second mortgage* was an indispensable and proper party . . . . In a foreclosure action all parties interested in the ownership *of the lien to be foreclosed* must be joined as either plaintiffs or as defendants." (emphasis added)).[12] Although the trial court in *Four Leaf Federal Credit Union v. Chinapen*, No. 707289/25 (N.Y. Sup. Ct. Queens Cnty. Aug. 19, 2025),[13] relying on *418 Trading Corp.*, concluded that the senior mortgage-holder was a necessary party to the foreclosure action and that the junior mortgage-holder's failure to join them as a party was a jurisdictional defect, the Court believes, as just discussed, that *Chinapen* misreads or

_____

[12] While few courts have addressed the distinction under New York law between senior/junior mortgages on the same *property* and senior/junior interests in the same *mortgage*, the Court is persuaded that the difference is material. As stated earlier, a senior mortgage-holder on the same property is neither a necessary party nor, in most cases, a proper party to a junior mortgage-holder's foreclosure action. *See* Bergman & Valk, *supra*, § 12.10. However, when "more than one party is a holder of [a single] mortgage . . . . it is well settled that all owners of the lien to be foreclosed must be joined." *Id.* § 12.05[1] (citing, *inter alia*, *418 Trading Corp.*, 137 N.Y.S.2d 513); *accord Holm v. Goodley Holding Corp.*, 295 N.Y.S. 885, 887 (N.Y. Sup. Ct. Bronx Cnty. 1937) ("It is well settled that in a foreclosure action all parties interested in the ownership of the lien to be foreclosed must be joined either as plaintiffs or defendants."). As the court explained in *Holm*, a single note and mortgage "represents a single and distinct obligation," and therefore a junior interest-holder in such an obligation cannot independently institute its own foreclosure action as if "in the same legal position as a second mortgagee with respect to the property," because that would "be tantamount to a holding that by assignment of shares or varying priorities with respect to a single indebtedness, several distinct and independent obligations are thereby created." *Holm*, 295 N.Y.S. at 886–87. This makes sense given that New York law generally permits only one foreclosure action for a single debt/mortgage. *See* RPAPL § 1301; *Fed. Home Loan Mortg. Corp. v. 141st St. & Broadway Realty Co.*, No. 92-CV-1433 (MBM), 1994 WL 9686, at *6 (S.D.N.Y. Jan. 7, 1994) (explaining that the purpose of RPAPL § 1301 "is to avoid multiple lawsuits to recover the same mortgage debt by confining the proceedings to a single action in a single court"). Thus, if a junior interest-holder to a mortgage seeks to initiate a foreclosure action, it must first give the senior interest-holder notice and an opportunity to commence the action itself, *see* RPAPL § 1315 (discussed *infra*), and must also join them to the action. Those measures are unnecessary when the mortgages are separate and thus can be foreclosed separately.

[13] Baez filed a copy of the *Chinapen* decision along with her Reply. (*See* Dkt. 32-1.)

overreads *418 Trading Corp.* as supporting this conclusion.  The Court, therefore, is not persuaded by either *418 Trading Corp.* or *Chinapen*.

The notice requirements of RPAPL § 1315 also do not apply here.  That statute allows a junior interest in a mortgage to foreclose on that mortgage after a notice/written demand is served on the senior interest *in the same mortgage.  See, e.g.*, *FDIC v. Four Star Holding Co.*, 178 F.3d 97, 99 (2d Cir. 1999) (in case where two parties shared ownership of single mortgage, explaining that RPAPL § 1315 "allows [the] junior mortgage participant to commence and control a foreclosure action when the senior participant fails to do so").  The Court is aware of no binding authority from the New York Court of Appeals, or persuasive authority from any other court, interpreting RPAPL § 1315 to require a junior mortgage-holder to notify the holder of a *separate* senior mortgage before commencing a foreclosure action on the junior mortgage.

Therefore, the Court does not find that Plaintiff's alleged failure to comply with RPAPL §§ 1311 or 1315 provides a basis for vacatur under Rule 60(b)(4).[14]

## III.    Rule 60(b)(6)

Under Rule 60(b)(6), a court may relieve a party from a final judgment for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  "Rule 60(b)(6) applies only 'when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule' and 'there are extraordinary circumstances justifying relief.'"  *Tapper v. Hearn*, 833 F.3d 166, 172 (2d Cir. 2016) (citation omitted).  Unlike under Rule 60(b)(4), where the district court has no discretion and must vacate if the judgment is void, *see Mickalis Pawn Shop*, 645 F.3d at 138, the decision of whether

---

[14] Moreover, it is not clear that either RPAPL §§ 1311 or 1315 are jurisdictional. *See Assets Recovery 23, LLC v. Gasper*, No. 19-CV-2628 (NGG) (CLP), 2024 WL 2292349, at *3 (E.D.N.Y. May 20, 2024) (noting that "[c]ourts disagree on whether NY RPAPL § 1311 is jurisdictional" (citing *Toiny LLC v. Gill*, No. 18-CV-40 (NGG) (VMS), 2022 WL 4118520, at *4 (E.D.N.Y. Sep. 9, 2022) (collecting cases))).

to vacate a default judgment under the other clauses of Rule 60(b) is "left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties," *Enron Oil*, 10 F.3d at 95. While exercising that discretion, however, the district court still must consider the Second Circuit's "preference for resolving disputes on the merits" rather than through default procedures. *Green*, 420 F.3d at 104 (quoting *Powerserve Int'l*, 239 F.3d at 514).

Three factors guide the Court's decision on whether to vacate a default judgment: "(1) whether the default was willful, (2) whether the defendant demonstrates a meritorious defense, and (3) whether vacating the default will cause the plaintiff prejudice." *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 (2d Cir. 2024) (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). Of the three factors, "willfulness carries the most weight." *De Curtis*, 529 F. App'x at 86. The Court may also consider "[o]ther relevant equitable factors." *Enron Oil*, 10 F.3d at 96.

### A.    Baez's Default Was Not Willful

Since the "basic purpose of default judgment is to protect parties from undue delay-harassment," the Second Circuit has held that "willfulness in the context of a judgment by default requires 'something more than mere negligence,' such as 'egregious or deliberate conduct.'" *Green*, 420 F.3d at 108 (quoting *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 60–61 (2d Cir. 1983)); *accord Orion*, 95 F.4th at 104. In contrast, "[a] default is not willful when it was caused by 'a mistake made in good faith.'" *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010) (citation omitted); *see United States v. Starling*, 76 F.4th 92, 102 (2d Cir. 2023) (holding that the defendant's default was not willful because her failure to act was based on reliance on advice from a state prosecutor regarding forfeiture law).

Windward Bora contends that Baez's default was willful because Baez was in the country and was properly served with notice of this action in October 2019. (*See* Opp'n, Dkt. 31, at 9.)

The Court disagrees.  Having found that Baez's sworn denial of service is sufficient to rebut the presumption of service in the Rule 60(b)(4) context, it is necessarily also sufficient "to demonstrate that default was not willful in the Rule 60(b)(6) context." *See Flores v. El Bukanitas Inc.*, No. 22-CV-6751 (DG) (VMS), 2025 WL 3460744, at *3 (E.D.N.Y. Aug. 8, 2025) (quoting *Drywall Tapers & Pointers of Greater N.Y. Loc. Union 1974 v. Creative Installations, Inc.*, 343 F.R.D. 358, 364 (S.D.N.Y. 2022)).  And, even assuming that Baez was properly served, that alone does not demonstrate that her default was "egregious or deliberate." *See Starling*, 76 F.4th at 102; *see also Atl. Recording Corp. v. Brennan*, 534 F. Supp. 2d 278, 281 (D. Conn. 2008) ("Lacking more information, the Defendant's failure to answer the complaint after proper service can be characterized as negligent at most . . . ." (collecting cases)).  Indeed, resolving all doubts in Baez's favor and assuming she did not learn about this case or judgment until 2021, Baez explains that she took no action in this case because her bankruptcy counsel (incorrectly) informed her that the judgment was addressed.  (Baez Decl., Dkt. 26-1, ¶ 9.)  Baez's failure to act based on the erroneous advice of counsel could be considered negligent, but it certainly does not rise to the level of egregious or deliberate willfulness.  And once Baez learned about her impending eviction, she promptly took action to obtain counsel and appear in this action.  (*See id.* ¶¶ 11–12.)[15] Furthermore, it is unclear to the Court *why* Baez would have deliberately or intentionally defaulted in this case, since it is unclear how defaulting would strategically benefit her, especially while she was continuing to pay the first/senior mortgage on the Property.  If anything, her default threatens

---

[15] Once Baez learned about the State Court Case and her pending eviction in early 2025, she struggled to obtain counsel that was willing to represent her before this Court.  (Baez Decl., Dkt. 26-1, ¶¶ 11–12.)  She eventually retained Attorney David Broderick, but further delays "ensued due to logistical challenges," such as Attorney Broderick's hospitalizations in "February 2025, May 2025, and July 23, 2025, for emergency surgery."  (*Id.* ¶ 12.)  These are plausible excuses for Baez's delay in bringing the instant Motion to Vacate, which, again, support the Court's conclusion that Baez's default was not willful.

to significantly harm her as she now faces eviction from her home, despite being current on the senior of the two mortgages.

The Court therefore concludes that Baez's default was not willful. Accordingly, this factor weighs in favor of vacatur.

### B.      Baez Asserts a Meritorious Defense

In order to present a meritorious defense, a defendant need not "establish [their] defense conclusively, but [they] must present evidence of facts that, if proven at trial, would constitute a complete defense" to the underlying action. *Green*, 420 F.3d at 109 (quoting *McNulty*, 137 F.3d at 740). This factor "does not demand a high showing." *Atl. Recording Corp.*, 534 F. Supp. 2d at 281.

Here, Baez has provided evidence of facts that, if proven at trial, would constitute a complete defense under multiple legal theories. For example, she asserts a statute of limitations defense, alleging that "the loan was accelerated prior to 2011 and the statute of limitations expired in 2017." (Mot., Dkt. 25, at ECF 14.) If proven, the "statute of limitations [defense] is a valid defense to a foreclosure proceeding." *Wells Fargo Bank Nat'l Ass'n as Tr. for Holders of COMM 2014-UBS6 Mortg. Tr. Com. Mortg. Pass-Through Certificates v. 366 Realty LLC*, No. 17-CV-3570 (KAM) (JAM), 2024 WL 4891739, at *9 (E.D.N.Y. Nov. 26, 2024) (collecting cases), *report and recommendation adopted sub nom. Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, No. 17-CV-3570 (KAM) (JAM), 2025 WL 556036 (E.D.N.Y. Feb. 20, 2025).

Baez also raises a defense based on Windward Bora's non-compliance with RPAPL § 1304. (Baez Decl., Dkt. 26-1, ¶ 8; Reply, Dkt. 32, at 6–7, 12).[16] "Proper service of [an] RPAPL

---

[16] This argument is raised for the first time in Baez's reply brief. (*See generally* Mot., Dkt. 25; Reply, Dkt. 32, at 6–7, 12.) The Court exercises its discretion to consider Baez's argument made for the first time on reply because she gave Windward Bora notice of this same argument in her declaration, (*see* Baez Decl., Dkt. 26-1), which was filed before Windward Bora's

[§] 1304 notice on the borrower . . . is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." *CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021) (first alteration in original) (quoting *Deutsche Bank Nat'l Tr. Co. v. Spanos*, 961 N.Y.S.2d 200, 202 (2013)). While Windward Bora attaches a copy of the 90-day pre-foreclosure notice it purportedly sent Baez via certified mail, (Exs. to Compl., Dkt. 1-1, at ECF 58–66), and an affidavit of mailing, (*id.* at ECF 67), Windward Bora's evidence notably lacks proof of delivery or receipt; there are no signatures, names, or dates on the "delivery" sections of the certified mail receipts, (*see id.* at ECF 61, 66). Moreover, the Court takes judicial notice of the tracking histories on the United States Postal Service website associated with Windward Bora's tracking numbers, and Baez is correct that they appear to "confirm[] only label creation without deposit into the postal system—indicating non-mailing." (Baez Decl., Dkt. 26-1, ¶ 8.) And Baez denies receiving the notices. (*See* Baez Aff., Dkt. 25, at ECF 4 ¶ 13 (stating that Baez never received notice of the foreclosure or lawsuit); Baez Decl., Dkt. 26-1, ¶ 13 (stating that Baez "received no notices regarding Windward Bora LLC's junior lien").) Based on this evidence, Baez has sufficiently raised a meritorious defense that Windward Bora failed to comply with RPAPL § 1304, which, if proven, would constitute a complete defense to the foreclosure action. *See, e.g.*, *Windward Bora v. Weiss*, 717 F. Supp. 3d at 263 (holding that defendant raised a meritorious defense where plaintiff failed to submit proof of compliance with RPAPL § 1304 and defendant denied receiving the notice); *Courchevel 1850 v. Rodriguez*, No. 17-

---

opposition, (*see* Opp'n, Dkt. 31), thus giving Windward Bora the opportunity to address it. *See Ruggerio v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (holding that district courts have discretion to consider arguments raised for the first time on reply, and finding no abuse of discretion in that case because the other party could have sought to file sur-reply if they claimed unfair surprise); *Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) (affirming district court's decision to rely on evidence submitted for first time in reply papers because, *inter alia*, the other party was not surprised by the evidence).

CV-6311 (MKB), 2019 WL 2233828, at *5–6 (E.D.N.Y. May 22, 2019) (similar); *see also Blue Castle (Cayman) Ltd. v. Yee*, No. 23-CV-1724 (LDH) (LB), 2024 WL 4485498, at *3 (E.D.N.Y. Feb. 20, 2024) (finding "first-class mail receipts accompanied by certified mail tracking numbers and receipts" insufficient to satisfy RPAPL § 1304 because "[o]n its face, this evidence establishes only that plaintiff prepared the mailings" and collecting cases holding same), *report and recommendation adopted*, No. 23-CV-1724 (LDH) (LB), 2024 WL 4344788 (E.D.N.Y. Sep. 30, 2024), *reconsideration denied*, No. 23-CV-1724 (LDH) (LB), 2025 WL 2793648 (E.D.N.Y. Sep. 30, 2025).

Because Baez has raised at least one meritorious defense, this factor also weighs in favor of vacatur.

### C.    Vacatur Would Not Prejudice Windward Bora

"Some delay is inevitable when a motion to vacate a default judgment is granted; thus, 'delay alone is not a sufficient basis for establishing prejudice'" to the plaintiff. *Green*, 420 F.3d at 110 (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). "Something more is needed." *Id.* "For example, delay 'may thwart plaintiff's recovery or remedy. It also may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Id.* (quoting 10A Wright & Miller's Federal Practice & Procedure § 2699 (3d ed. 1998)).

Windward Bora argues that it would be prejudiced if the Court grants vacatur because it acquired the Property over four years ago and has relied on the finality of this Court's judgments to initiate eviction proceedings. (Opp'n, Dkt. 31, at 1.) This claim, however, is belied by Windward Bora's own conduct; Windward Bora waited nearly four years after the Court issued the January 2021 Amended Judgment of Foreclosure and Sale before initiating eviction proceedings. Indeed, as in other cases brought by Windward Bora, the delay it complains of is

largely of its "own making."  *See, e.g.*, *Windward Bora, LLC v. Valencia*, No. 19-CV-4147 (NGG) (RER), 2020 WL 6470293, at *4 (E.D.N.Y. Oct. 16, 2020) ("[The] cost and delay is of [Windward Bora's] own making, and [Windward Bora] cannot be heard to complain thereof."), *report and recommendation adopted*, No. 19-CV-4147 (NGG) (RER), 2020 WL 6450286 (E.D.N.Y. Nov. 3, 2020); *see also Sacks v. Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2006-3*, No. 12-CV-6338 (LDW) (SIL), 2016 WL 11480710, at *7 (E.D.N.Y. Aug. 15, 2016) ("Where, as here, the plaintiff's own activity contributes to a delay, a finding of prejudice is inappropriate."), *report and recommendation adopted sub nom. Sacks v. Deutsche Bank Nat'l Tr. Co.*, No. 12-CV-6338 (LDW) (SIL), 2016 WL 5338540 (E.D.N.Y. Sep. 23, 2016).  Other than citing delay, Windward Bora offers no explanation for why vacatur would cause it the "severe" and "substantial" prejudice it claims.  (Opp'n, Dkt. 31, at 10.)  And, even as to this largely self-inflicted delay, Windward Bora does not claim that the delay has caused or will result in any actual harm, such as losing evidence, complicating discovery, or creating an opportunity for fraud or collusion. (*See id.* (stating only that Windward Bora had "relied in good faith on the finality of this Court's judgment" to attempt to "enforce its rights as deed holder" by initiating eviction proceedings).)

Thus, the Court finds that Windward Bora will suffer no cognizable prejudice from the Court granting Baez's motion, and this factor weighs in favor of vacatur.

### D.  Other Extraordinary Equitable Interests Favor Vacatur

Finally, the Court is concerned that Windward Bora's delay in initiating eviction proceedings has significantly and inequitably prejudiced Baez.  Windward Bora purchased the Property in August 2021 but did not seek to take possession until early 2025.  During that time, Baez alleges that she remained unaware of the sale and continued making monthly payments towards the primary mortgage encumbering the Property of approximately $1,900 per month.  (*See* Baez Decl., Dkt. 26-1, ¶¶ 4, 14.)  As Baez correctly points out, this "conferr[ed] a substantial,

25

unearned benefit on [Windward Bora] while [Baez] maintained the Property." (*Id.* ¶ 14.) The potential windfall to Windward Bora constitutes a "harsh" and "unfair" result to Baez. *See Enron Oil*, 10 F.3d at 96 (when determining whether to set aside default or default judgment, courts may consider other "relevant equitable factors." such as whether default brings about "a harsh or unfair result" (citing *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir.1986))). This also constitutes an extraordinary circumstance justifying relief on a ground "not recognized in clauses (1)–(5)" of Rule 60(b), and, therefore, relief under the catch-all provision of Rule 60(b)(6) is proper. *See Tapper*, 833 F.3d at 172 (citation omitted).

### E.      Weighing the Factors

Acknowledging this Circuit's preference for resolving disputes on the merits, and given the Court's conclusions that (1) Baez's default was not willful, (2) Baez has asserted at least one meritorious defense, (3) Windward Bora would not be prejudiced by vacatur, and (4) exceptional equitable interests weigh against allowing the Court's judgments to remain in place, the Court grants Baez's Motion to Vacate under Rule 60(b)(6).[17] For similar reasons, the Court also finds that Baez's Rule 60(b)(6) motion was made within a reasonable time, "taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality." *Wang*, 839 F. App'x at 646 (quoting *Thai-Lao Lignite*, 864 F.3d at 182).

---

[17] Because there is sufficient justification to vacate under Rule 60(b)(6), there is also sufficient justification to vacate the Certificate of Default and Default Judgment under Rule 55(c), which incorporates Rule 60(b). Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."). The Court does not need to separately analyze whether "good cause" has been shown to vacate the Certificate of Default under Rule 55(c) because "the factors examined in deciding whether to set aside a default or a default judgment are the same, [but] courts apply the factors more rigorously in the case of a default judgment, because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Enron Oil*, 10 F.3d at 96.

26

## IV.   Setting Aside the Foreclosure Sale

Having decided to vacate the Amended Judgment of Foreclosure and Sale, the Court also sets aside the foreclosure sale itself and deems the referee's deed, (*see* Referee's Report of Sale, Dkt. 24), null and void.  *See Gustavia Home*, 802 F. Supp. 3d at 471–72 (setting aside foreclosure sale under New York law after vacating the Court's judgment of foreclosure and sale).  New York law permits the Court to "exercise its inherent equitable power over a sale made pursuant to its judgment or decree to ensure that it is not made the instrument of injustice." *Guardian Loan Co., Inc. v. Early*, 419 N.Y.S.2d 56, 60 (1979).  "Although this power should be exercised sparingly and with great caution," the Court "may set aside its own judicial sale upon grounds otherwise insufficient to confer an absolute legal right to a resale in order to relieve of oppressive or unfair conduct." *Id.* (collecting cases).  For the same equitable reasons that the Court finds it warranted to vacate its Amended Judgment of Foreclosure and Sale, the Court also finds it warranted to set aside the foreclosure sale based upon that judgment.  Indeed, setting aside the sale is necessary to give this Court's Order practical effect.

## CONCLUSION

For the reasons stated above, the Court grants Baez's Motion to Vacate, (Dkt. 25), pursuant to Rules 60(b)(6) and 55(c) of the Federal Rules of Civil Procedure.  The Clerk of Court is respectfully directed to re-open this case and vacate the Certificate of Default, (Dkt. 13), Default Judgment, (Dkt. 17), and Amended Judgment of Foreclosure and Sale, (Dkt. 23).  The Court also sets aside the foreclosure sale that took place pursuant to the Amended Judgment of Foreclosure and Sale, (*see* Dkt. 24).  Windward Bora is ordered to rescind the foreclosure sale of the Property and to, by thirty (30) days from this Memorandum & Order, file a status report regarding its progress to that effect.

27

As discussed *supra*, the Court cannot determine whether service was properly effectuated in this case without an evidentiary hearing.  Given that defective service might warrant dismissal of this matter, Baez shall, by April 14, 2026, advise the Court whether she is seeking an evidentiary hearing on this issue; or, given her stated commitment to resolving this case on the merits, (Baez Decl., Dkt. 26-1, ¶¶ 4, 6, 19), whether she consents to an extension of time for Windward Bora to serve her with the Summons and Complaint in this action or will execute a waiver of service pursuant to Rule 4(d).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 30, 2026
       Brooklyn, New York